UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ZARA LEVENTHAL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STREAMLABS LLC,<br><br>Defendant. | Case No. 22-cv-01330-LB<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: ECF No. 32 |

## INTRODUCTION

The plaintiff, on behalf of a nationwide class, contends that Streamlabs LLC deceives consumers into signing up for a subscription product that carries an automatic monthly fee of $5.99. Streamlabs has software that allows content creators to (1) stream their videos on platforms (such as YouTube) and (2) collect donations from viewers through third-party payment processors (such as PayPal). The subscription product is Streamlabs Pro, which allows donors to add GIFs or other effects (such as hearts, stars, or confetti) to the messages that accompany the viewers' donations. The plaintiff in this case added a GIF to a donation and contends that Streamlabs' subsequent disclosure to her — that adding a GIF or effect required joining Streamlabs Pro for $5.99 per month — was deceptive because it suggested that it was a one-time fee and did not disclose that the $5.99 monthly fee would renew automatically, in violation of California's Consumer Legal Remedies Act (CLRA) and Unfair Competition Law (UCL).

ORDER – No. 22-cv-01330-LB

Streamlabs moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), generally on the ground that the plaintiff did not plausibly allege claims. The plaintiff alleges facts that violate two requirements of California's Automatic Renewal Law (ARL): conspicuous disclosure of subscription terms and a consumer's affirmative consent to automatic renewal. She parrots the ARL's language but does not cite it, possibly because the ARL protects only California consumers and she resides in New York. Streamlabs contends that she thus cannot rely on the ARL, the CLRA's reasonable-consumer test otherwise does not require the ARL's conspicuous disclosure and consumer consent, and, alternatively, the plaintiff must provide a more definite statement that cites the ARL explicitly so that Streamlabs can assert its ARL defenses. It also contends that the plaintiff did not plead fraud with the particularity required by Rule 9(b), unfair conduct in violation of the UCL, or an entitlement to equitable relief under the UCL.

The court denies the motion. The plaintiff's fact allegations, if true, plausibly plead that Streamlabs deceived consumers with its disclosures about the $5.99 fee. The complaint's reliance on ARL requirements does not bar the claims.

**STATEMENT**

Streamlabs is a California-based company that allows content creators (known as "streamers") to post live videos on platforms such as YouTube and — if they create a donation page — collect donations from viewers through payment processors such as PayPal.[1] When viewers donate, they can add a GIF or other effects to the message through a subscription product called Streamlabs Pro that costs $5.99 per month and is renewed automatically every month.[2]

In August 2020, the plaintiff made a $5 donation to a streamer, added a GIF, was taken to a confirmation page, and subscribed there to Streamlabs Pro. Streamlabs then charged her $5.99 per month, which she did not realize until May 2021.[3] She challenges the sufficiency of Streamlabs'

---

[1] Am. Compl. – ECF No. 31 at 3 (¶ 9), 4 (¶¶ 14–15). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 5–8 (¶¶ 17–18, 20–30).

[3] *Id.* at 10–12 (¶¶ 38–43).

disclosures: she contends that the disclosures suggest a one-time fee of $5.99, when in fact, the monthly fee is an automatically recurring fee. To illustrate the donation process, the complaint shows the webpages that viewers encounter when donating.

At the time of her donation, the streamers' donation page looked like this:[4]



Among other features, the page has a place to specify a donation amount, a place to send a message to the streamer, the message "Donate at least 1USD to use a GIF," thumbnail pictures of GIFs and effects (with the word "Pro" next to them), and a green "donate" button to submit the donation. It says nothing about subscription fees.

The complaint has a donation page "that matches what the [donation] page looked like when [plaintiff] Leventhal donated." It has the same content as the previous image:[5]

---

[4] *Id.* at 6.

[5] *Id.* at 10–11 (¶ 39).



The current donation page is similar and looks like this:[6]



---

[6] *Id.* at 5.

It has areas for the donation amount, a message to the streamer, and the "donate" button. Instead of thumbnail pictures, it has a red box with "Extras Pro $5.99/mo" and slide buttons that allow a viewer to add a GIF or effect.

For both versions of the donation page, when a viewer clicks "Donate," a "Donation Confirmation" page pops up:[7]



It shows the donation amount and, in a red box, shows a $5.99 charge for Streamlabs Pro. Underneath the red box, there is a notice: "You will be charged $5.99 per month by joining Streamlabs Pro, which allows you to add special effects and other features to your alerts. Click here for more information." The $5.99 charge and the notice have a font that is smaller in size and lighter in color than the bolded font used for the donation amount.[8] Also, the page does not say that the Streamlabs Pro subscription and the $5.99 monthly charge are renewed automatically each month until the viewer cancels the subscription.[9] If viewers click "Click here for more information," a Streamlabs Pro page (https://streamlabs.com/content-hub/post/streamlabs-pro) pops up. It "explains the benefits, monthly cost, [and] cancellation and refund policy of Streamlabs Pro subscription[s],"

---

[7] *Id.* at 7.

[8] *Id.* (¶ 24) (citing https://streamlabs.com/content-hub/post/streamlabs-pro, which the plaintiff accessed on January 7, 2022).

[9] *Id.* at 8 (¶ 26).

but it does not "disclose that Streamlabs will keep charging Streamlabs Pro subscribers $5.99 per month on their credit or debit cards until the subscribers cancel the plan."[10]

"Streamlabs failed to present the automatic renewal function of [the] Streamlabs Pro subscription . . . in a clear and conspicuous way that called the attention of Donators" because "from the moment Donators added a GIF or effect . . . to the moment" that Streamlabs charged them, "they were not notified [or] asked to give consent to the automatic renewal function of [the] Streamlabs Pro subscription."[11] "As a result, thousands of Donators who subscribed to Streamlabs Pro have been unknowingly charged $5.99 per month when their subscription automatically renewed." Some "were charged for many months without realizing it."[12]

The complaint has additional fact allegations about the process and webpages (displayed above) that the plaintiff encountered when she made her $5 donation in August 2020. The donation page gave her the option to add a GIF or an effect. It said "PRO" on top of the GIFs and effects, but "it did not explain what [PRO] means [or] how much it costs." It "did not contain any information about [a] Streamlabs Pro subscription, such as its automatic renewal feature, the cost of each renewal, the future monthly charges on a subscriber's credit or debit cards, the cancellation policy, and the length of the renewal term."[13] "Without knowing that she would be automatically signed up for a Streamlabs Pro subscription and that she would be charged every month when the subscription automatically renews, [plaintiff] Leventhal added a GIF or an effect to her donation . . . and proceeded to checkout." At the Donation Confirmation page, "Streamlabs again failed to disclose any information about the automatic renewal function of [the] Streamlabs Pro subscription." As a result, the plaintiff "made the payment without knowing that she would be charged $5.99 per month for the subscription until she cancel[ed] the plan." Streamlabs charged her that day with her $5 donation and the $5.99 fee and charged her $5.99 per month thereafter.[14]

---

[10] *Id.* (¶ 27).

[11] *Id.* (¶¶ 28–29).

[12] *Id.* (¶ 30).

[13] *Id.* at 10 (¶ 39).

[14] *Id.* at 11 (¶¶ 40–42).

The plaintiff did not discover the recurring monthly charges until May 2021, when PayPal emailed her about them. She "did not even have an account with Streamlabs at the time." She created an account with the email linked to her PayPal account to try to cancel the subscription, but "she could not find a way to cancel the subscription." On May 10, 2021, she contacted Streamlabs customer support to ask about the charges and told them "that she had never agreed to enroll in any Streamlabs subscriptions and that she had been completely unaware of the charges." On May 12, 2021, a Streamlabs representative responded that they would cancel her Streamlabs Pro account, refunded her $5.99 for the most recent subscription month, and refused to refund the rest. The total charges for the ten months were $59.90. The representative also said that "to avoid being automatically signed up for Streamlabs Pro, she should 'make sure to not toggle on Pro effects or GIFs' when she donates."[15]

By "at the latest[] early 2019," Streamlabs knew about consumer complaints from threads on Twitter, Reddit, and YouTube where customers complained about their unknowing enrollment in the subscription service and Streamlabs' refusal to contact them about refunds and cancellation of the subscriptions.[16] For example, in a 2017 Twitter thread, "many Twitter users tagged [Streamlabs'] official Twitter account and complained about the $5.99 monthly charges," and Streamlabs' official Twitter account "responded to most of the complaints." The complaint cites two complaints on Twitter in May 2019. One said that the user was charged for two months for "unk[n]owingly [] being a Streamlabs Pro member. I didn't even know it existed at all?! All I have been using Streamlabs for so far has been opening it up, and starting streams. Not even click[ing] anything that allowed me to be charged." The second said,

> What the actual hell guys? I was charged for a pro service that I never signed up for. If you automatically sign people up who donate[,] that seems mighty unscrupulous. I will need my refund back for the last two months or I will have to report this to the proper authorities.[17]

---

[15] *Id.* at 11–12 (¶¶ 43–46).

[16] *Id.* at 2–3 (¶ 4), 8–9 (¶¶ 31, 34, 37), 12–13 (¶¶ 47–49) (giving specific examples of complaints starting with a Twitter thread in 2017, two complaints in May 2019, and other complaints without reference to time).

[17] *Id.* at 9 (¶¶ 35–36).

ORDER – No. 22-cv-01330-LB            7

The complaint has other, undated consumer complaints. A Reddit user said,

> Did a donation to a twitch streamer I was watching a few months back, but I don't remember signing up for a 5.99$ per month subscription. Just found out now and good thing it has only been two months of charges without my consent. Did a bit of research and this has been an ongoing issue for years. A thread I came upon has one of the Streamlabs staff replying that they are hoping to find a fix. Well it's already been years and people are still having this issue.
>
> Are they not fixing this obviously because they are earning a lot from accidental signups? Which I think is yes because there ha[ve] [been] a lot of reports, discussions about it even from years ago, up to now. This just means there's obviously [something] wrong with the donation system. This is not even counting people that are not aware of this issue and ha[ve] recurring charges without . . . their consent. . . .[18]

A Twitter user said,

> If [you've] ever donat[ed] to a creator and used Streamlabs[,] you may want to check if you automatically got signed up for their more premium service . . . since you already gave them your credit card info[,] they just use that to sign you up for Streamlabs at $5 a month.[] Did it to me.[19]

Despite knowing about the complaints, Streamlabs did not "take any effective measures to ensure [that] Donators are clearly made aware of the automatic renewal nature of Streamlabs Pro, nor did it change its billing practices to obtain affirmative consent from the Donators before it placed monthly charges on their credit or debit cards."[20] Its "representations about Streamlabs Pro were motivated by an intent to deceive, and to lure Donators into unknowingly signing up for the membership." It knew from the donor complaints about "their unknowing enrollment in Streamlabs Pro" "since 2019, if not before," and still maintained its deceptive practice of not disclosing the automatic-renewal feature. Evidence of its intent to deceive also is shown by the font size on the Donation Confirmation page (displayed above): the $5.99 charge and the notice have a font that is smaller in size and lighter in color than the bolded font used for the donation amount.[21] After the plaintiff filed the complaint, Streamlabs "changed its website to add specific

---

[18] *Id.* at 12 (¶ 48).

[19] *Id.* at 12–13 (¶ 49).

[20] *Id.* at 9 (¶ 34).

[21] *Id.* at 9–10 (¶ 34, 37).

information about its automatic renewal policy . . . [and] about how to cancel a Streamlabs Pro automatic subscription."[22]

On behalf of a nationwide class, the plaintiff claims that the automatic-renewal process creates the impression that $5.99 is a one-time charge, rather than an automatically recurring monthly charge, and thus is an unlawful misrepresentation, in violation of the CLRA, Cal. Civ. Code § 1770(a)(5), and deceptive advertising, in violation of the CLRA, *id.* § 1770(a)(9).[23] She claims that the process violates the UCL: it is fraudulent (and thus is unfair competition) because Streamlabs concealed the fact that the subscription would renew automatically and impose recurring charges until cancelled, thus deceiving thousands of consumers.[24] It is unlawful because it is fraud, in violation of Cal. Civil Code §§ 1572, 1709, and 1710, and deceptive advertising, in violation of California's False Advertising Law (FAL), Cal. Bus & Prof. Code § 17500.[25]

The class is "all persons in the United States who were enrolled in the Streamlabs Pro automatic renewal subscription after adding a GIF or effect to their donation, and were then billed $5.99 per month for the subscription."[26]

The court has jurisdiction under the Class Action Fairness Act. 28 U.S.C. § 1332(d)(2). All parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636.[27] The court held a hearing on December 22, 2022.

**STANDARDS OF REVIEW**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the

---

[22] *Id.* at 13 (¶ 50).
[23] *Id.* at 15–17 (¶¶ 60–74).
[24] *Id.* at 17 (¶ 78).
[25] *Id.* at 18 (¶ 80).
[26] *Id.* at 13 (¶ 52).
[27] Consents – ECF Nos. 12, 14.

1    'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic
2    recitation of the elements of a cause of action will not do. Factual allegations must be enough to
3    raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned up).P

4    Put another way, a complaint must contain sufficient factual allegations that, when accepted as
5    true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678
6    (2009); *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 F. App'x 231,
7    234 (9th Cir. 2020). "[O]nly the *claim* needs to be plausible, and not the facts themselves."
8    *NorthBay*, 838 F. App'x at 234 (citing *Iqbal*, 556 U.S. at 696); *see Interpipe Contracting, Inc. v.
9    Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018) (a court must accept the fact allegations "as true
10   and construe them in the light most favorable to the plaintiff") (cleaned up). "A claim has facial
11   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable
12   inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The
13   plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer
14   possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are
15   merely consistent with a defendant's liability, it stops short of the line between possibility and
16   plausibility of 'entitlement to relief.'" *Id.* (cleaned up). Still, "a formulaic recitation of the
17   elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

18   Fraud allegations elicit a more demanding standard. "In alleging fraud . . . , a party must state
19   with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other
20   conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This means that
21   "[a]verments of fraud must be accompanied by the 'who, what, when, where, and how' of the
22   misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). "The
23   plaintiff must [also] set forth what is false or misleading about a statement, and why it is false." *Id.*
24   (cleaned up). Like the basic "notice pleading" demands of Rule 8, a driving concern behind Rule
25   9(b) is that defendants be given fair notice of the charges against them. *In re Lui*, 646 F. App'x
26   571, 573 (9th Cir. 2016) ("Rule 9(b) demands that allegations of fraud be specific enough to give
27   defendants notice of the particular misconduct . . . so that they can defend against the charge and
28   not just deny that they have done anything wrong.") (cleaned up); *Odom v. Microsoft Corp.*, 486

F.3d 541, 553 (9th Cir. 2007) (Rule 9(b) requires particularity "so that the defendant can prepare an adequate answer").

If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1182 (9th Cir. 2016) (cleaned up).

## ANALYSIS

Streamlabs contends that the New York plaintiff predicates her CLRA and UCL fraud claims on the ARL, cannot do so because the ARL protects only California consumers, and otherwise does not plead claims, in part because the CLRA test does not require the ARL's conspicuous disclosure or explicit consumer consent and in part because she does not plead fraud with particularity. (The parties do not dispute that the claims generally are grounded in fraud.) Streamlabs also contends that the plaintiff did not plead unfair conduct that violates the UCL or an entitlement to equitable relief under the UCL.[28] The court denies the motion to dismiss because the plaintiff alleged facts that, if true, plausibly plead Streamlabs' misrepresentations and deceptive advertising.

**1. The ACL Predicate**

Streamlabs contends that the plaintiff is predicating her claims on the ARL, she cannot because she is a New York resident, and the ARL thus does not apply to her or the nationwide class. It points to the complaint's copying of ARL language without citing the statute. For example, the ARL makes it unlawful to "[f]ail to present the automatic renewal offer terms . . . in a clear and conspicuous manner." Cal. Bus. & Prof. Code § 17602(a)(1). The complaint alleges that Streamlabs "failed to present the automatic renewal function . . . in a clear and conspicuous way." The ARL defines "clear and conspicuous" as "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text," *id.* § 17601(c), and the complaint alleges the smaller font and lighter color. The ARL requires a consumer's affirmative consent to an

---

[28] Mot. – ECF No. 32 at 9–10, 13–28.

automatic renewal, *id.* § 17602(a)(2), and the complaint alleges Streamlabs' failure to obtain consumers' affirmative consent. The ARL makes it unlawful to fail to provide the cancellation policy, *id.* § 17602(a)(3), and the complaint charges that Streamlabs did not provide the cancellation policy.[29] The plaintiff disavows a reliance on the ARL: it does not create a private right of action, and she charges fraud.[30] The court denies the motion. The complaint's fact allegations (about Streamlabs' misrepresentations and false advertising that also violate the ARL) do not defeat the claim.

The plaintiff alleges that Streamlabs' display of a $5.99 per month charge suggests that it is a one-time charge, not a recurring monthly charge that persists until a consumer cancels the subscription. She thus claims an unlawful misrepresentation and deceptive advertising, in violation of the CLRA, and fraud and false advertising in violation of the UCL, predicated on the California Civil Code and the FAL.[31] The plaintiff describes the fee process, including how Streamlabs displays the $5.99 fee, alleges plausibly that "per month" suggests a one-time charge, alleges that she was confused, points to other consumer confusion, points to the absence of a notice-of-cancellation policy, and describes how she could not find a cancellation policy online. Her allegations support her misrepresentation and false-advertising claims. Some may parrot the ARL, but they are at core fact allegations about Streamlabs' processes and the resulting consumer confusion. Thus, while the plaintiff as a New York resident cannot predicate a UCL claim on a violation of the ARL, she can support her claims with fact allegations about Streamlabs' "failure to fairly apprise consumers of the terms they were accepting." *Robbins v. Plushcare, Inc.*, No. 21-cv-03444-MMC, 2022 U.S. Dist. LEXIS 85595, at *2 (N.D. Cal. May 11, 2022).

Given that the plaintiff does not rely on the ARL as a predicate statute, the court also denies Streamlabs' motion for a more definite statement that cites the ARL by section. A party may move for a more definite statement of a pleading that is "so vague or ambiguous that the party cannot

---

[29] *Id.* at 14–16 (citing the ARL and the complaint).
[30] Opp'n – ECF No. 39 at 9–11.
[31] Am. Comp. – ECF No. 31 at 15–18 (¶¶ 60–74, 78, 80).

reasonably prepare a response." Fed. R. Civ. P. 12(e). "The rule is aimed at unintelligibility rather than lack of detail and is only appropriate when the defendants cannot understand the substance of the claim asserted." *Griffin v. Cedar Fair, L.P.*, 817 F. Supp. 2d 1152, 1156 (N.D. Cal. 2011). The Rule 12(e) standard is not met here: the plaintiff's fact allegations are not unintelligible and are — as discussed in the next section — sufficiently specific for Streamlabs to prepare a response. *Izzetov v. Tesla Inc.*, No. 5:19-cv-03734-EJD, 2020 WL 1677333, at *5–6 (N.D. Cal. Apr. 6, 2020).

### 2. CLRA and UCL Fraud and Unlawful Claims

The next issue is whether the plaintiff pleaded fraud with particularity under Rule 9(b). She did.

Claims under the CLRA, the UCL fraudulent prong, and the FAL are governed by the "reasonable consumer" test. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Courts often analyze claims under these statutes together. *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1063 (N.D. Cal. 2017). "Under the reasonable consumer standard, [plaintiffs] must show that 'members of the public are likely to be deceived.'" *Williams*, 552 F.3d at 938 (cleaned up). This requires the plaintiff to "plead facts showing that a 'significant portion of the general consuming public . . . , acting reasonably in the circumstances, could be misled.'" *Freeman v. Indochino Apparel, Inc.*, 443 F. Supp. 3d 1107, 1111 (N.D. Cal. 2020) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)).

"Where the advertising or practice is targeted to a particular group or type of consumers, either more sophisticated or less sophisticated than the ordinary consumer, the question whether it is misleading . . . will be viewed from the vantage point of members of the targeted group . . . ." *Lavie*, 105 Cal. App. 4th at 512. Where "tech-savvy consumers [are] targeted," they can be expected to know certain things about the relevant technology, such as how software changes over time and how popular apps work. *Baird v. Samsung Elecs. Am., Inc.*, 522 F. Supp. 3d 679, 688–89 (N.D. Cal. 2021).

Generally, determining "whether a reasonable consumer would be deceived" is a question of fact. *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 16 (N.D. Cal. 2020); *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). Nonetheless, in rare situations, "a court

may determine, as a matter of law, that the alleged violations of the UCL . . . and CLRA are simply not plausible." *Cheslow*, 445 F. Supp. 3d at 16 (cleaned up); *Becerra v. Dr Pepper/Seven Up, Inc.*, No. 17-cv-05921-WHO, 2018 WL 1569697, at *7 (N.D. Cal. Mar. 30, 2018).

Under California law, "[t]he essential allegations for an action in fraud or deceit are false representation as to a material fact, knowledge of its falsity, intent to defraud, justifiable reliance[,] and resulting damage." *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal. App. 3d 1324, 1330–31 (1986); *Stansfield v. Starkey*, 220 Cal. App. 3d 59, 72–73 (1990).

It is plausible that a reasonable consumer (including tech-savvy consumers) could be deceived by the process illustrated in the Statement and conclude that the $5.99 per month fee was a one-time fee. The disclosures did not say that the fee was an automatic monthly fee. There is evidence of actual consumer confusion, by the plaintiff and the consumer reviews. Similarly, for the standalone fraud claims, the allegations are sufficiently specific that Streamlabs' process misled consumers that the $5.99 per month fee was a one-time donation, not an automatic monthly fee.

In sum, the plaintiff plausibly pleads the fraud-based claims specifically, allowing Streamlabs to answer the complaint. *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019–20 (9th Cir. 2020). This conclusion includes the plaintiff's specifically pleading facts that, if true, show a material misrepresentation, the plaintiff's reliance on that misrepresentation, and her resulting damages in the form of the monthly fees incurred until PayPal notified her of the recurring fee.

In its motion, Streamlabs also noted the plaintiff's failure to file the venue affidavit required by Cal. Civ. Code § 1780(d).[32] She filed the affidavit, curing any error,[33] and "Streamlabs does not object to venue in this [c]ourt."[34] "A court need not dismiss a CLRA claim based on the fact that the venue affidavit was not filed concurrently with the complaint." *Cork v. CC-Palo Alto, Inc.*, 534 F. Supp. 3d 1156, 1182 (N.D. Cal. 2021); *Ladore v. Sony Comput. Ent. Am., LLC*, 75 F. Supp. 3d 1065, 1074 (N.D. Cal. 2014).

---

[32] Mot. – ECF No. 32 at 27.

[33] Leventhal Aff. – ECF No. 40.

[34] Reply – ECF No. 41 at 19 n.6.

**3. UCL Unfair Claim and Equitable Relief**

The unlawful and fraud UCL claims survive. The last issue is whether the plaintiff plausibly pleaded unfair conduct and her entitlement to equitable relief under the UCL in the form of restitution.[35] She did.

When analyzing unfair UCL claims, "the Ninth Circuit has approved the use of either the balancing or the tethering tests in consumer actions." *Hadley*, 243 F. Supp. 3d at 1104 (citing *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 735–36 (9th Cir. 2007)). Under the balancing test, the court "must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012) (cleaned up). The complaint is predicated on the balancing test.[36] *Hadley*, 243 F. Supp. 3d at 1104 (analyzing only the test alleged in the complaint); *Lozano*, 504 F.3d at 736 ("[T]he district court did not apply the wrong legal standard by relying on the balancing test . . . .").

The amended complaint satisfies the balancing test. It alleges consumer confusion sufficiently and that the deception about the subscription outweighs its benefits, given that consumers "don't believe they are enrolled in and, therefore, don't use" the subscription.[37] *Robinson v. OnStar, LLC*, No. 15-cv-1731 JLS (BGS), 2019 WL 13108704, *11 (S.D. Cal. Mar. 18, 2019) (it is plausible that the harm of an inadequately disclosed subscription outweighs the utility of the subscription even where a free trial was provided first).

Streamlabs contends that the plaintiff did not plausibly plead her right to equitable relief in the form of restitution because money damages are available to her.[38] Citing cases from this district, the plaintiff counters that the claim survives because she pleads it as an alternative form of relief.[39] "[T]here is no binding precedent that holds that pleading equitable restitution in the alternative is improper." *Jeong v. Nexo Fin. LLC*, No. 21-cv-02392-BLF, 2022 WL 174236, at *27 (N.D. Cal.

---

[35] Mot. – ECF No. 32 at 23–26.

[36] Am. Compl. – ECF No. 31 at 19 (¶ 84).

[37] *Id.*

[38] Reply – ECF No. 41 at 16–19.

[39] Opp'n – ECF No. 39 at 16–17.

Jan. 19, 2022). The court thus does not dismiss the UCL claim for equitable relief in the form of restitution.

## CONCLUSION

The court denies the motion to dismiss the amended complaint. This resolves ECF No. 32.

**IT IS SO ORDERED.**

Dated: December 23, 2022

_____
LAUREL BEELER
United States Magistrate Judge