Kristin J. Moody (SBN 206326)
Alexander S. Vahdat (SBN 284963)
BERMAN TABACCO
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6282
Email: kmoody@bermantabacco.com
        avahdat@bermantabacco.com

*Local Counsel for Plaintiff and the Proposed Class*

Patricia I. Avery (admitted *Pro Hac Vice*)
Philip M. Black (SBN 308619)
WOLF POPPER LLP
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600
Email: pavery@wolfpopper.com
        pblack@wolfpopper.com

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| ZARA LEVENTHAL, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>vs.<br><br>STREAMLABS, LLC,<br><br>                              Defendant. | Case Number: 3:22-cv-01330-LB<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: January 30, 2025<br>Hearing Time: 9:30 AM PST<br>Location: Courtroom B – 15th Floor<br>Judge: Laurel Beeler |

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. iii

NOTICE OF UNOPPOSED MOTION ................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 2

I.      STATEMENT OF ISSUES ......................................................................................... 2

II.     INTRODUCTION ...................................................................................................... 2

III.    STATEMENT OF FACTS .......................................................................................... 4

        A.      Plaintiff's Allegations ..................................................................................... 4

        B.      Procedural History .......................................................................................... 4

                1.      Preliminary Approval and Notice Plan ................................................. 5

IV.     THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT AND
        CERTIFY THE SETTLEMENT CLASS ..................................................................... 7

        A.      The Settlement is Fair, Reasonable, and Adequate.................................... 8

                1.      The Settlement Resulted from Arms' Length Negotiations by Experienced
                        and Informed Counsel .......................................................................... 9

                2.      Plaintiff and Plaintiff's Counsel Have Adequately Represented the
                        Settlement Class .................................................................................. 10

                3.      The Settlement Provides Adequate Relief ............................................ 11

                4.      Rule 23(e)(2)(C)(ii)-(iv) Factors Support the Adequacy of the Relief ...... 13

                5.      The Proposed Settlement Treats Settlement Class Members Equitably .... 15

                6.      The Reaction of the Class Supports Final Approval .............................. 15

        B.      The Court Should Certify the Settlement Class .......................................... 16

                1.      The Class Is So Numerous That Joinder Is Impracticable ...................... 17

                2.      Common Questions Are Apt to Drive the Resolution of the Litigation .... 18

                3.      Plaintiff's Claims Are Typical of the Claims of the Settlement Class ...... 18

4.    Plaintiff and Plaintiff's Counsel Adequately Represent the Interests of the Class ................................................................................................... 19

5.    Common Issues Predominate .................................................................... 19

6.    A Class Action is Superior to Alternative Methods of Resolution ............ 20

C.    The Notice Plan Satisfied Due Process And Complied With Fed. R. Civ. P. 23(e) 21

V.    THE PLAN OF ALLOCATION SHOULD BE APPROVED ........................................ 22

VI.    CONCLUSION ............................................................................................................. 23

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. Inc. v. Windsor,*
  521 U.S. 591 (1997).................................................................................... 11, 19

*Andrade-Heymsfield v. Nextfoods*, Inc.,
  No.: 3:21-cv-01446-BTM-MSB, 2024 U.S. Dist. LEXIS 151063 (S.D. Cal. Apr. 8, 2024) ........ 22

*Barbosa v. Cargill Meat Solutions Corp.*,
  297 F.R.D. 431 (E.D. Cal. 2013) ................................................................ 19, 20

*Baron v. HyreCar Inc.,*
  No. 2:21-cv-06918-FWS-JC, 2024 U.S. Dist. LEXIS 131946 (C.D. Cal. Jul. 19, 2024) .............. 11

*Bellows v. NCO Fin. Sys.*, Inc.,
  No. 3:07-cv-01413-W-AJB, 2008 U.S. Dist. LEXIS 103525 (S.D. Cal. Dec. 10, 2008)............... 10

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ........................................................................ 9, 14

*Boone v. Amazon.Com Servs., LLC,*
  2024 U.S. Dist. LEXIS 203185 (E.D. Cal. Nov. 7, 2024)...................................... 11, 14

*Bruno v. Quten Research Inst., LLC,*
  280 F.R.D. 524 (C.D. Cal. 2011) ..................................................................... 21

*Chun-Hoon v. McKee Foods Corp.,*
  716 F. Supp. 2d 848 (N.D. Cal. 2010) ............................................................... 12

*Churchill Village, L.L.C. v. General Electric,*
  361 F.3d 566 (9th Cir. 2004) ............................................................................ 9

*Class Plaintiffs v. City of Seattle,*
  955 F.2d 1268 (9th Cir. 1992) .......................................................................... 7

*Conti v. L'Oreal USA S/D, Inc.,*
  No.: 1:19-cv-0769 JLT SKO, 2023 U.S. Dist. LEXIS 124524 (C.D. Cal. Jul. 18, 2023).. 10, 11, 18

*Dixon v. Cushman & Wakefield Western, Inc.,*
  No. 18-cv-05813-JSC, 2022 U.S. Dist. LEXIS 73512 (N.D. Cal. Apr. 21, 2022) ...................... 12

*Erica P. John Fund, Inc. v. Halliburton Co.,*
  563 U.S. 804 (2011) ...................................................................................... 16

*Estrella v. Freedom Fin'l Network,*
  No. C 09–03156 SI, 2010 U.S. Dist. LEXIS 61236 (N.D. Cal. June 2, 2010).............................. 18

*Figueroa v. Capital One, N.A.,*
  No.: 18cv692 JM(BGS), 2021 U.S. Dist. LEXIS 11962 (S.D. Cal. Jan. 21, 2021) ..................... 15

*Gatchalian v. Atl. Recovery Sols., LLC,*
  No. Case No. 22-cv-04108-JSC, 2023 U.S. Dist. LEXIS 205823 (N.D. Cal. Nov. 16, 2023)....... 21

Gen. Tel. Co. of Sw. v. Falcon,
  457 U.S. 147 (1982)..................................................................................... 18

*Gen. Tel. Co. v. EEOC,*
  446 U.S. 318 (1980).................................................................................... 17

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ......................................................................................... *passim*

*Hefler v. Wells Fargo & Co.*,
  No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045 (N.D. Cal. Dec. 18, 2018) ................. 9, 22

*In re Hyundai and Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ................................................................................................. 19

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................................................... 22

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ................................................................................................. 17

*McKinney-Drobnis v. Oreshack*,
  16 F.4th 594 (9th Cir. 2021) .................................................................................................. 14

*McPhail v. First Command Fin. Planning, Inc.*,
  No. 05-171-IEG, 2009 U.S. Dist. LEXIS 26544 (S.D. Cal. Mar. 30, 2009) ................................ 7

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ................................................................................................. 10

*Nat'l Rural Telecomms Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) .............................................................................. 10, 12, 16

*Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ...................................................................................... 8, 12, 21

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................................. 7, 22

*Rodriguez v. Danell Custom Harvesting, LLC*,
  327 F.R.D. 375 (E.D. Cal. 2018) ......................................................................................... 9, 10

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ...................................................................................... 9, 13, 15

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ................................................................................................... 8

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ................................................................................................. 7

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................................ 11, 14

*Torrisi v. Tucson Elec. Power*,
  8 F.3d 170 (9th Cir. 1993) ....................................................................................................... 9

*In re Volkswagen "Clean Diesel" Mktg.*,
  No. 15-MD-02672-CRB, 2022 U.S. Dist. LEXIS 204422 (N.D. Cal. Nov. 9, 2022) ................... 15

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .............................................................................................................. 17

**Statutes**

Cal. Bus. & Prof. Code §17200 et seq .......................................................................................... 5

Cal. Civ. Code §1750 et seq........................................................................................................ 5

1

**Rules**

Fed. R. Civ. P. 23(a) ..................................................................................... 2, 7, 21

Fed. R. Civ. P. 23(b) ......................................................................................... *passim*

Fed. R. Civ. P. 23(c) ............................................................................................. 15

Fed. R. Civ. P. 23(e) ................................................................................. 13, 16, 21

Fed. R. Civ. P. 23(e)(2) ...................................................................................... *passim*

**Other Authorities**

5 Moore Federal Practice, § 23.85(2)(b) (Matthew Bender 3d. ed.) ................................................ 12

### NOTICE OF UNOPPOSED MOTION

**PLEASE TAKE NOTICE** that at 9:30 a.m. on Thursday, January 30, 2025 or as soon thereafter as available, in the courtroom of Magistrate Judge Laurel Beeler of the above-captioned Court, located at the San Francisco Courthouse, Courtroom B – 15th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff Zara Leventhal will and hereby does move this Court, pursuant to Fed. R. Civ. P. 23(e), for entry of an order: (1) granting final certification of the class for settlement and appointing class counsel; and (2) granting final approval of the Settlement in the above-captioned action on the terms set forth in the Stipulation (the "Settlement").

This Motion is based on the accompanying Memorandum of Points and Authorities, the Declaration of Patricia I. Avery in Support of (I) Plaintiff's Motion for Final Approval of Class Action Settlement and Certification of Settlement Class, and (II) Plaintiff's Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, and an Incentive Award to the Class Representative, all documents and exhibits in support thereof, the Settlement Agreement, the pleadings and papers filed in this Action, and any other matters this Court may consider.

Defendant does not oppose this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    STATEMENT OF ISSUES

1.    Whether the Court should grant final certification of the Settlement Class and appoint Wolf Popper LLP and Berman Tabacco as Settlement Class Counsel.

2.    Whether the Court should grant final approval of the Settlement.

3.    Whether the Court should grant final approval of the Plan of Allocation.

## II.    INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff respectfully requests final approval of the Settlement, which was achieved after intensive good faith negotiations by experienced counsel, with the assistance of a respected mediator.  The resulting Settlement provides significant benefits to the Settlement Class, and is fully supported by Plaintiff and Plaintiff's Counsel, who are well-informed about the strengths and weaknesses of this Action.

After extensive litigation involving the full briefing of Defendant's Motions to Dismiss, the full analysis of legal and factual issues impacting this Action, discovery, and fully adversarial settlement negotiations, the Parties entered into a Stipulation setting forth the terms to resolve the claims asserted in the Action on a class-wide basis.[1]  Pursuant to the terms of the Settlement Agreement, Defendant Streamlabs, LLC ("Streamlabs") created a $4.4 million Settlement Fund to reimburse Settlement Class Members who were allegedly deceived into enrolling in Defendant's "Streamlabs Pro" automatic renewal subscription.

---

[1] Unless otherwise noted, capitalized terms used in this Memorandum are defined in the Settlement Agreement dated July 17, 2024 ("Agreement" or "Settlement Agreement," ECF No. 86-1), or the concurrently filed Plaintiff's Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, and an Incentive Award to the Class Representative (the "Fee Brief"); Declaration of Patricia I. Avery in Support of (I) Plaintiff's Motion for Final Approval of Class Action Settlement and Certification of Settlement Class, and (II) Plaintiff's Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, and an Incentive Award to the Class Representative ("Avery Declaration); and the Declaration of Plaintiff and Class Representative Zara Leventhal in Support of Final Approval of Proposed Class Action Settlement, Award of Attorneys' Fees and Expenses, and Award of Service Fee, attached to the Avery Declaration as Exhibit 1. Unless otherwise noted, all citations to "¶ __" refer to the Agreement.

On August 29, 2024, the Court signed an Order Granting Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order," ECF No. 93),[2] and set a hearing date for final approval of the Settlement for January 30, 2025. Pursuant to the Preliminary Approval Order, beginning on September 19, 2024, Angeion Group ("Angeion"), the Settlement Administrator, e-mailed the notice directly to 565,079 potential Settlement Class Members. *See* Angeion Decl. ¶¶ 6,9.[3] The approved video advertisement and social media campaign are well underway. In addition, Angeion established the Settlement Website, which went live on September 17, 2024, and the Toll-Free Hotline. The website has been accessed by 30,654 unique users totaling 42,743 page views. Settlement Class Members have until January 9, 2025, to submit their exclusion requests and/or objections, and Angeion and Plaintiff's Counsel have already fielded 18 calls from Settlement Class Members. As of December 3, 2024, 1,203 Settlement Class Members have submitted claims. *Id.,* ¶15. No Settlement Class Members have objected to the Settlement and only 14 persons have excluded themselves from the Class. The deadline to file claims is not until March 31, 2025. *See* Avery Decl., ¶44; ECF No. 93 at 11.

As discussed below, the Settlement, which provides a meaningful recovery in the face of substantial risks of litigation, is fair, reasonable, adequate, and meets the relevant criteria for final approval. Moreover, the fairness and adequacy of the Settlement is evidenced by the fact that in response to Plaintiff's comprehensive Notice Plan, which advised Settlement Class Members of their rights, no Class Member has objected to date.

Accordingly, Plaintiff respectfully requests that the Settlement Class be certified, the Settlement be approved by this Court, and the Final Judgment and Order Approving Class Action Settlement be entered.

---

[2] The Court signed an Order Amending Order (ECF #93) Granting Preliminary Approval of Class Action Settlement on August 29, 2024. ECF No. 95, granting Class Members additional time to file any objections, and providing additional contact information for Class Members who might have questions.

[3] Declaration of Kimberly O'Kane Re: Notice and Administration ("Angeion Decl."), attached to the Avery Declaration as Exhibit 3.

III.    **STATEMENT OF FACTS**

A.    **Plaintiff's Allegations**

Plaintiff brings this Action on behalf of all persons that were allegedly deceived into enrolling in Defendant's "Streamlabs Pro" automatic renewal subscription during the period of March 3, 2018 through May 17, 2022 (the "Class Period").

The Action alleges that Streamlabs deceived consumers into signing up for an automatically renewing subscription product, Streamlabs Pro, that charges a monthly subscription fee. *See* ¶1.2. Streamlabs allows content creators to stream their videos on platforms (such as YouTube) and to collect donations from viewers through third-party payment processors (such as PayPal). *Id.* Streamlabs Pro allows donors to add GIFs or other effects (such as hearts, stars, or confetti) to messages that accompany their donations. *Id.* Plaintiff alleged she added a GIF and was automatically enrolled in Streamlabs Pro at a monthly fee of $5.99.[4] *Id.* Plaintiff alleged Streamlabs' conduct was deceptive because it suggested that Streamlabs Pro was a one-time fee and did not disclose that the monthly fee would renew automatically, in violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §1750 et seq., and the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200 et seq. *See id.*

Defendant denies the claims and allegations in this Action. Avery Decl., ¶¶30, 31.

B.    **Procedural History**

At the outset, Plaintiff's Counsel conducted an extensive investigation of Streamlabs and Streamlabs Pro, undertaking a detailed analysis of Defendant's website and product offerings; Defendant's purchase and enrollment procedures; its disclosures; its business operations; its marketing techniques and strategies; and a thorough review of customer complaints levied online against Streamlabs and Streamlabs Pro. Thereafter, Plaintiff, through Plaintiff's Counsel, filed this putative

---

[4] Plaintiff was charged $5.99 monthly, but the monthly fee may have differed slightly during the Class Period.

class action on March 2, 2022.  ECF No. 1.  An Amended Class Action Complaint was filed on July 5, 2022 (the "Complaint").  ECF No. 31.

Thereafter, Defendant filed a motion to dismiss the Complaint on August 15, 2022. ECF No. 32.  Plaintiff opposed the motion on September 28, 2022. ECF No. 39. Following oral argument, on December 23, 2023, the Court entered an order denying Defendant's motion in its entirety. ECF No. 54.

The Parties served initial disclosures and subsequently engaged in hotly-contested discovery efforts over the following months. Avery Decl., ¶¶22-24. This culminated in Plaintiff sending Defendant a draft of a discovery dispute letter on September 27, 2023, requesting a discovery conference if the Parties' then scheduled upcoming mediation session was unsuccessful.[5]

On September 28, 2023, the Parties participated in a lengthy mediation session guided by the comprehensive mediation statements prepared by the Parties and submitted to the mediator, John Bates of JAMS, who presided over the mediation session. *Id.,* ¶25. While unsuccessful, in November 2023, several weeks after the mediation session, after further negotiations with the aid of Mr. Bates, the Parties reached an agreement-in-principle to settle this Action. The Parties engaged in substantial negotiations over the ensuing months before finalizing the Settlement papers and executing the Stipulation on July 17, 2024. At all times, the Parties' negotiations were at arm's length and in good faith. *Id.,* ¶¶25-27.

              1.    <u>Preliminary Approval and Notice Plan</u>

On July 25, 2024, Plaintiff moved the Court for an order certifying the Settlement Class, granting preliminary approval of the Settlement, and approving the Notice Plan detailed in the Settlement Agreement. ECF No. 85.

---

[5] Moreover, Plaintiff was also prepared to file a motion to compel concerning Defendant's failure to produce documents, including: (1) pertinent financial information; (2) customer complaints in Defendant's file-storage database; (3) a comprehensive privilege log compliant with Rule 2.1 of Judge Beeler's Standing Order; and (4) a Rule 30(b)(6) witness.

On August 29, 2024, the Court entered the Preliminary Approval Order, which preliminarily approved the Settlement and the Notice Plan, including the dissemination of a Notice by email and the inclusion of the Long-Form Notice in the Settlement Website. ECF No. 93 at 5. On September 5, 2024, at the Parties' request, the Court amended the Preliminary Approval Order to move up the deadline for Plaintiff's Counsel to file their motions for final approval of the Settlement and a motion for an award of attorneys' fees, costs, and expenses, and Incentive Award, which would allow Class Members additional time to consider the Settlement. ECF No. 95.

On September 13, 2024, Angeion received two lists from Defendant containing a total of 654,253 records, including the Subscription ID, email addresses, and transaction data of potential Settlement Class Members. Notably, the lists also included some non-US residents (since Streamlabs did not have geo-location data on many Streamlabs Pro enrollees) and pre- and post-class period persons. Angeion Decl. ¶6. After processing both lists, Angeion narrowed the data down to 594,412 unique email addresses and 589,669 unique potential Settlement Class Member records, representing approximately 565,079 potential members of the Settlement Class. *Id.*, ¶¶7-8.

Beginning on September 27, 2024, Angeion e-mailed Notice to all 565,079 potential members of the Settlement Class, using a final Settlement Class Member list ("Class List") provided by the Defendant (the "Email Campaign"). *Id.*, ¶8. Angeion subjected the provided e-mail addresses to a cleansing and validation process, which validated 566,786 of 594,412 unique e-mail addresses on the Class List. *Id.*, ¶6. As of December 3, 2024, the Email Campaign has recorded a success rate of 74.2%, representing the number of e-mails successfully delivered minus those blocked at the ISP level. *Id.*, ¶9. Concurrently, Angeion commenced the approved state-of-the-art media campaign consisting of video advertisements on YouTube and TikTok, complemented by a paid search campaign via Google. *Id.*, ¶¶11,12.

On or around November 30, 2024 Angeion disseminated a Reminder Email Notice to the 566,073 valid email addresses associated with potential Settlement Class Members who had yet to submit a claim or request for exclusion. *Id.*, ¶10.

Furthermore, Angeion established and continues to maintain the case-specific Settlement Website, www.StreamlabsClassActionSettlement.com, where Settlement Class Members can view general information about the Settlement and review relevant Court documents, including the Claim Form; the Amended Class Action Complaint; the Long Form Notice; the Settlement Agreement; Plaintiff's Notice of Motion for Conditional Class Certification, Preliminary Approval of Class Action Settlement, and Memorandum of Points and Authorities in Support Thereof; the Order Certifying Settlement Class, Granting Preliminary Approval of Class Action Settlement and Approving Form and Manner of Notice of Settlement; and the Stipulation and Order Amending Order Granting Preliminary Approval of Class Action Settlement. *Id.*, ¶13. The website was operational beginning on September 17, 2024. *See id*. Thus far, the Settlement Website has received approximately 30,654 unique users totaling 42,743 pageviews. *Id.*

Finally, Angeion established and continues to maintain a toll-free hotline to accommodate Settlement Class Members and further apprise them of their rights and options with respect to the Settlement. The hotline was operational beginning on September 17, 2024. Angeion Decl. ¶14. Since then, the hotline has been accessible 24/7 and has received approximately 18 calls. *Id.*

As of December 3, 2024, over 1,200 Settlement Class Members have submitted Claims thus far. Avery Decl., ¶53; Angeion Decl. ¶15. The deadline to file claims is not until March 31, 2025.

## IV. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT AND CERTIFY THE SETTLEMENT CLASS

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."

This Circuit has adopted a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.,* 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). *See also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("[T]he court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits").

"[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998).

In exercising their discretion, courts have recognized a strong initial presumption of fairness applies where, as here, the settlement is reached by experienced counsel after arms'-length negotiations. *See McPhail v. First Command Fin. Planning, Inc.,* No. 05-171-IEG, 2009 U.S. Dist. LEXIS 26544, at *16 (S.D. Cal. Mar. 30, 2009). "[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co*., 327 F.3d 938, 952 (9th Cir. 2003). That being said, a:

> [F]airness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

*Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (citations omitted).

It is the considered judgment of Plaintiff's Counsel that the Settlement provides for a fair, reasonable, and adequate resolution of this Action, and thus, should be entitled to a presumption of reasonableness warranting a grant of final approval. Avery Decl., ¶37.

### A.    The Settlement is Fair, Reasonable, and Adequate

Rule 23(e)(2) requires district courts to deliberate the following considerations in determining whether a proposed class-action settlement is fair, reasonable, and adequate:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Under Ninth Circuit precedent, the district courts have historically been required to balance the following, seemingly overlapping factors:

(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon,* 150 F.3d at 1026). *See Torrisi v. Tucson Elec. Power,* 8 F.3d 170, 1376 (9th Cir. 1993) (citation omitted) ("This list is not exclusive and different factors may predominate in different factual contexts."). With respect to the *Churchill* factors, the factors listed under Rule 23(e)(2) were "not designed 'to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045, at *13 (N.D. Cal. Dec. 18, 2018) (quoting Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes).

The Preliminary Approval Order "preliminarily approve[d] the Settlement Agreement as within the range of possible final approval, and as meriting submission to the Settlement Class for its consideration." ECF No. 93 at 4. The facts concerning the Settlement remain the same. The application of each of the relevant factors weighs in favor granting final approval.

1.    <u>The Settlement Resulted from Arms' Length Negotiations by Experienced and Informed Counsel</u>

Pursuant to Rule 23(e)(2)(B), the Court must ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011) (quotation marks and citation omitted). So long as the settlement is "the product of an arms-length, non-collusive, negotiated resolution," *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948,

965 (9th Cir. 2009), the Court may afford the Parties the presumption that the Settlement is fair and reasonable.

As noted in the Preliminary Approval Order, "the Settlement Agreement was reached as a result of arm's length negotiations by the Parties and their counsel through an experienced JAMS mediator, John B. Bates." ECF No. 93 at 4. *See Rodriguez v. Danell Custom Harvesting, LLC*, 327 F.R.D. 375, 388 (E.D. Cal. 2018) ("The fact that the parties believe they engaged in sufficient discovery to weigh the merits of the action and engaged the services of a professional mediator in settling the action weighs in favor of approving the class action settlement.") There was no collusion, fraud, or overreaching. Avery Decl., ¶¶25-27.

Benefiting from their expertise and an in-depth understanding of the facts and legal issues of this Action, Plaintiff's Counsel carefully assessed the merits of Plaintiff's case and the Settlement, and determined that is in the best interests of Plaintiff and the Settlement Class. *See Conti v. L'Oreal USA S/D, Inc.*, No.: 1:19-cv-0769 JLT SKO, 2023 U.S. Dist. LEXIS 124524, at *31 (C.D. Cal. Jul. 18, 2023) (citation omitted) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."); *Danell Custom Harvesting*, 327 F.R.D. at 388-389 (quoting *Nat'l Rural Telecomms Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("The Court is to accord great weight to the recommendation of counsel because they are aware of the facts of the litigation and in a better position than the court to  produce a settlement that fairly reflects the parties' expected outcome in the litigation."); *Bellows v. NCO Fin. Sys.*, Inc., No. 3:07-cv-01413-W-AJB, 2008 U.S. Dist. LEXIS 103525, at *22 (S.D. Cal. Dec. 10, 2008) ("[I]t is the considered judgment of experienced counsel that this settlement is a fair, reasonable, and adequate settlement of the litigation, which should be given great weight.").

This factor weighs in favor of granting final approval of the Settlement.

2.    Plaintiff and Plaintiff's Counsel Have Adequately Represented the Settlement Class

Pursuant to Rule 23(e)(2)(A), the Court must ensure that Plaintiff and Plaintiff's Counsel have adequately represented the Settlement Class. This "requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b)

will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

Here, Plaintiff and Plaintiff's Counsel have worked hard to vigorously prosecute this Action in the best interests of the Settlement Class. From the outset, Plaintiff's interests have aligned with those of the Settlement Class. *See Boone v. Amazon.Com Servs., LLC,* 2024 U.S. Dist. LEXIS 203185, at *20 (E.D. Cal. Nov. 7, 2024)(citations omitted) ("Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees."); *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 625-26 (1997) (internal quotations and citations omitted) (requiring the named plaintiff to "be part of the class and possess the same interest and suffer the same injury as the class members."). Plaintiff actively participated and contributed to in this Action, working alongside Plaintiff's Counsel. She readily communicated with Plaintiff's Counsel concerning her prior dealings with Streamlabs and Streamlabs Pro, and reviewed crucial documents, such as the mediation statement, and the Settlement Agreement.

Moreover, Plaintiff retained counsel with "significant experience in litigating complex class actions." *Baron v. HyreCar Inc.,* No. 2:21-cv-06918-FWS-JC, 2024 U.S. Dist. LEXIS 131946, at *15 (C.D. Cal. Jul. 19, 2024) (citation omitted). Plaintiff's Counsel, from their thorough investigation into the facts underlying the claims and allegations in the Complaint, to their vigorous negotiation of the Settlement Agreement, adeptly advocated for Plaintiff and the Settlement Class's best interests at all times. Avery Decl., ¶63. The Settlement reflects their efforts.

This factor weighs in favor of granting final approval of the Settlement.

3.    The Settlement Provides Adequate Relief

Pursuant to Rule 23(e)(2)(C)-(D), determining whether the relief provided by the Settlement is adequate requires the Court to "examine 'the complete package taken as a whole,' and the proposed settlement is 'not to be judged against a hypothetical or speculative measure of what might have been

achieved by the negotiators.'" *Conti,* 2023 U.S. Dist. LEXIS 124524, at *36 (quoting *Officers for Justice,* 688 F.2d at 628). "The relief that the settlement is expected to provide to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C)-(D), 2018 Advisory Comm. Notes.

In making their determination, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). However, "a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628.

Here, the Settlement provides excellent relief for the Settlement Class. Drawing from the $4.4 million Settlement Fund, to be distributed *pro rata*, each Settlement Class Member that submits a Valid Claim is eligible to receive up to a full refund for each automatically renewing monthly Streamlabs Pro subscription charge during the Class Period (less the amount of any refunded monthly payments the Authorized Claimant had already received). With over 500,000 Settlement Class Members, at a typical $5.99 monthly charge, the Net Settlement Fund would provide more than one month's worth of refund in the event that every Settlement Class Member participates. As discussed in the papers submitted in support of preliminary approval of the Settlement (*see* ECF Nos. 85-87), this Settlement represents a percentage of the damages (were Plaintiff to win everything at trial) that courts find reasonable. (The actual numbers were sealed by the Court due to their confidential nature.) *See Dixon v. Cushman & Wakefield Western, Inc.,* No. 18-cv-05813-JSC, 2022 U.S. Dist. LEXIS 73512, at *20 (N.D. Cal. Apr. 21, 2022) (approving a gross settlement fund reflecting "an estimated 8% of the total maximum recovery…in relation to the risks of continued litigation.").

Another "important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *DIRECTV*, 221 F.R.D. at 526 (quoting 5 Moore Federal Practice, § 23.85(2)(b) (Matthew Bender 3d. ed.)); *see id.* (finding settlement to be "preferable to lengthy and expensive litigation with uncertain results.").

Here, both Parties still maintain that their claims and defenses are meritorious. On the one hand, Plaintiff and Plaintiff's Counsel believe Defendant's practices violated the CLRA and the UCL.

On the other hand, Defendant continues to deny each and all of the claims and contentions asserted by Plaintiff. However, Plaintiff's Counsel are familiar with the significant challenges, risks, and uncertainties inherent in consumer class action litigation. If Plaintiff was to continue litigating this Action, she would have to resolve all of the ongoing discovery disputes with Defendant. Likewise, Plaintiff would have to secure class certification, overcome a likely motion for summary judgment, and prevail at trial. *See Chun-Hoon v. McKee Foods Corp.,* 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010) (encouraging settlement when "there are significant barriers plaintiffs must overcome in making their case."). Even if Plaintiff prevailed at every stage, Plaintiff faces the possibility of multiple lengthy appeals, efforts to decertify the class, motions for reconsideration, and more before the Court and the Ninth Circuit, which would prolong the time before the class received any relief.  *See W. Publ'g Corp.,* 563 F.3d at 966 ("Inevitable appeals would likely prolong the litigation, and any recovery by class members, for years.").

It is also notable that after Plaintiff filed her Complaint, Streamlabs amended its disclosures concerning Streamlabs Pro and as part of the Settlement has agreed not to revert back to its previous disclosures that Plaintiff challenged. ECF No. 86-1, ¶ 3.1, Thus, the public has also benefitted from Plaintiff's actions.

In light of these considerations, the Settlement offers a means of immediate, guaranteed, and generous monetary relief to the Settlement Class Members, weighing in favor of granting final approval of the Settlement.

4.    Rule 23(e)(2)(C)(ii)-(iv) Factors Support the Adequacy of the Relief

Pursuant to Rule 23(e)(2)(C), determining whether the relief provided by the Settlement is adequate further requires the Court to consider "the method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23(e), 2018 Advisory Comm. Notes. "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id.*

As described in the Preliminary Approval Brief, "the Claims Process is simple and straightforward." ECF No. 85 at 15. Angeion, "subject to the oversight of the Parties and this Court"

1   (ECF No. 93 at 6, 8), "shall use industry standard efforts to validate claims and any supporting

2   documentation. [Angeion] shall use adequate and customary procedures and standards to prevent the

3   payment of fraudulent claims and pay only Valid Claims." ECF No. 86-1, ¶4.6.

4        Pursuant to the Settlement Agreement, Angeion took considerable steps to "ensur[e] [the Claim

5   Form] requests sufficient information to determine the validity of submitted claim forms and to

6   prevent the payment of invalid or fraudulent claims." ¶4.2. To ensure accuracy and efficiency,

7   Angeion is tracking Claim Forms with unique security identifiers or control numbers issued to

8   Settlement Class Members identified on the Class List. *Id.* To receive their Settlement Benefits, i.e.,

9   their pro rata distribution of the Settlement Fund of $4.4 million (less the amount of attorneys' fees,

10  costs, and expenses awarded to Plaintiff's Counsel and the amount of any Incentive Award to the

11  Plaintiff approved by the Court), Settlement Class Members need only submit a completed and signed

12  Claim Form. ¶4.5. Settlement Class Members can do so via the Settlement Website or by mailing the

13  Claim Form to the Settlement Administrator no later than the Claim Filing Deadline, March 31, 2025.

14  ¶4.2. Thereafter, as Settlement Class Members submit their Claim Forms, Angeion intends to cross-

15  reference submissions with "emails, payment dates, and amounts" provided by Streamlabs "to verify

16  each claim." ¶4.3.

17       Notably, Angeion has also implemented and deployed AngeionAffirm, "a real-time fraud

18  detection system…to identify fraud in real time based on both state-of-the-art technology and analysis

19  of over a decade of historical claims data." Declaration of Steven Weisbrot, Esq. Re: Angeion Group

20  Qualifications & the Proposed Notice Plan (ECF No. 87) ¶31.

21       Rule 23(e)(2)(c) also requires the Court to "balance the 'proposed award of attorney's fees'

22  vis-à-vis the 'relief provided for the class's in determining whether the settlement is 'adequate' for

23  class members." *Boone,* 2024 U.S. Dist. LEXIS 203185, at *36 (quoting *McKinney-Drobnis v.*

24  *Oreshack*, 16 F.4th 594, 607 (9th Cir. 2021)). As detailed in the Fee Brief, Plaintiff's Counsel

25  respectfully request a fee and expense award in the amount of $1,100,000.00. *See In re Bluetooth*, 654

26  F.3d at 942 (courts typically calculate 25% of the [settlement] fund as the 'benchmark' for a reasonable

27

28

1    fee award."). Given the work performed by Plaintiff's Counsel and the meaningful relief provided by

2    the Settlement, the proposed Fee Award is well within the range of reasonableness.

3         These factors weigh in favor of granting final approval of the Settlement.

4         5.    The Proposed Settlement Treats Settlement Class Members Equitably

5         Pursuant to Rule 23(e)(2)(D), the Court must also consider whether the Settlement "improperly

6    grant[s] preferential treatment to class representatives or segments of the class." *In re Tableware*, 484

7    F. Supp. 2d at 1079.

8         Each Settlement Class Member that submits a Valid Claim, including Plaintiff, will receive a

9    distribution of the Net Settlement Fund on the same pro rata basis, based on the number of months

10   they paid Streamlabs for the Streamlabs Pro automatically renewing subscription. Like Plaintiff, "[t]he

11   Class Members are treated equitably here because their cash payments . . . roughly correspond to the

12   strength of their claims and the likelihood of damages at trial." *In re Volkswagen "Clean Diesel"*

13   *Mktg.,* No. 15-MD-02672-CRB, 2022 U.S. Dist. LEXIS 204422, at *21 (N.D. Cal. Nov. 9, 2022).

14       With respect to the proposed Incentive Award to Plaintiff, courts in this Circuit have

15   recognized that "[t]he purpose of incentive awards, therefore, is "to compensate class representatives

16   for work done on behalf of the class, to make up for financial or reputational risk undertaken in

17   bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."

18   *Figueroa v. Capital One, N.A.,* No.: 18cv692 JM(BGS)*,* 2021 U.S. Dist. LEXIS 11962, at *34 (S.D.

19   Cal. Jan. 21, 2021) (quoting *W. Publ'g Corp*, 563 F.3d at 958-59). Plaintiff has been actively involved

20   in the prosecution of this Action. She has devoted significant time and effort to litigating her interests,

21   and more importantly, those of the Settlement Class Members. As detailed in the Fee Brief, the

22   proposed Incentive Award, at $5,500, falls within the range of reasonableness.

23       These considerations further weigh in favor of granting final approval of the Settlement.

24       6.    The Reaction of the Class Supports Final Approval

25       Furthermore, pursuant to Rules 23(c)(2)(B)(vi) and 23(e)(5), as well as this Court's Procedural

26   Guidance for Class Action Settlements, the Court should consider the reaction of the Settlement Class

27   to the Settlement. In so doing, "the absence of a large number of objections to a proposed class action

28

settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision*, 559 F. Supp. 2d at 1043 (internal quotation and citation omitted). *See Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness.").

Here, the Settlement provides Settlement Class Members "who desire[] to be excluded from the Settlement Class, and therefore not bound by the terms of the Settlement Agreement," (ECF No. 93 at 7), the opportunity to request exclusion from the Settlement Class. The Settlement further allows Settlement Class Members to "submit a written objection to the Settlement Agreement." ECF No. 93 at 7-8. Settlement Class Members have until January 9, 2025 to do so. However, as of December 3, 2024, only 14 requests for exclusion have been received by Angeion (and none by Plaintiff's Counsel). Avery Decl., ¶53; Angeion Decl. ¶16. Likewise, thus far, no objections to the Settlement have been submitted to Angeion, filed with the Court, or otherwise served on Plaintiff's Counsel. Avery Decl., ¶52. *See DIRECTV*, 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.")

This weighs heavily in favor of granting final approval of the Settlement.

**B.    The Court Should Certify the Settlement Class**

Final approval of the Settlement further requires the Court to review the propriety of finally certifying the Settlement Class under Rules 23(a) and (b).

Under Rule 23(a), Plaintiff must demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

Under Rule 23(b)(3), Plaintiff must demonstrate that "the questions of law or fact common to class members predominate over any questions affecting only individual members," and that "a class

1  action is superior to other available methods for fairly and efficiently adjudicating the controversy."

2  *See Erica P. John Fund, Inc. v. Halliburton Co.,* 563 U.S. 804, 809 (2011).

3      In the Preliminary Approval Order, the Court "provisionally certifie[d], for settlement purposes

4  only, a Settlement Class pursuant to Rules 23(b)(2) and 23(b)(3), consisting of":

5      All Persons in the United States who, during the period March 3, 2018 through

6      May 17, 2022, were enrolled in a Streamlabs Pro automatic renewal

7      subscription after adding a GIF or effect to their donation, and were then billed

8      a monthly fee for the subscription (after their first charge for their initial GIF

9      or effect).

10  ECF 93 at 4.[6] *See also* ECF No. 95. Circumstances have not changed, and this Court should affirm

11  the Preliminary Approval Order certifying the Settlement Class because the four requirements of Rule

12  23(a)—numerosity, commonality, typicality, and adequacy—are met, as well as the dual requirements

13  of predominance and superiority under Rule 23(b)(3).

14         1.    <u>The Class Is So Numerous That Joinder Is Impracticable</u>

15      Numerosity under Rule 23(a) requires the Court to consider "specific facts of each case and

16  imposes no absolute limitations." *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980).

17      In the Preliminary Approval Order, the Court found that "Settlement Class Members are

18  sufficiently numerous such that joinder is impracticable." ECF No. 93 at 4. Streamlabs identified over

19  509,000 prospective Settlement Class Members as an ultra-conservative measurement, including

20  numerous persons who weren't Class Members since Streamlabs did not have geo-location data on

21

22

23

24  [6] The proposed Settlement Class consists of the same consumers as the class defined in the Complaint:

25  "All persons in the United States who were enrolled in the Streamlabs Pro automatic renewal subscription after adding a GIF or effect to their donation, and were then billed $5.99 per month for the subscription." Complaint, ¶52.  The time period included in the definition of the Settlement Class

26  merely recognizes the changes to Defendant's website made on May 17, 2022, and the deletion of the reference to $5.99 recognizes the fact that, according to Streamlabs, the monthly charge was not $5.99

27  throughout the entire period.

28

1    many enrollees (additional persons were sent the email notice in an abundance of caution to ensure

2    maximum distribution of the Notice).  Avery Decl., ¶33.

3              2.    Common Questions Are Apt to Drive the Resolution of the Litigation

4              Commonality under Rule 23(a) requires common questions and inquiries, the determination of

5    which "will resolve an issue that is central to the validity of each one of the claims in one stroke."

6    *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "The plaintiff must demonstrate the

7    capacity of class wide proceedings to generate common answers to common questions of law or fact

8    that are apt to drive the resolution of the litigation." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581,

9    588 (9th Cir. 2012) (internal quotation marks and citations omitted).

10            In the Preliminary Approval Order, the Court found that "there are common questions of law

11   and fact," (ECF No. 93 at 4), including (i) whether Defendant's conduct violated California's Unfair

12   Competition Law, and whether Defendant's conduct violated California's Consumers Legal Remedies

13   Act. *See* ECF No. 85 at 8. Such questions are apt to drive the resolution of Plaintiff's claims.

14            The burden of demonstrating commonality is met*. See Estrella v. Freedom Fin'l Network,* No.

15   C 09–03156 SI, 2010 U.S. Dist. LEXIS 61236, at *25 (N.D. Cal. June 2, 2010) (quoting *Hanlon*, 150

16   F.3d at 1019) (explaining that the "commonality requirement has been 'construed permissively,' and

17   its requirements deemed 'minimal.'").

18            3.    Plaintiff's Claims Are Typical of the Claims of the Settlement Class

19            "Typicality requires that a class representative 'possess the same interest and suffer the same

20   injury' as the putative class." *Betorina v. Randstad US, L.P.*, No. 15-cv-03646-EMC, 2017 U.S. Dist.

21   LEXIS 53317, at *10-11 (N.D. Cal. Apr. 6, 2017)(internal quotation and citation omitted).

22   "Representative claims need only be reasonably co-extensive with those of absent class members; they

23   need not be substantially identical." *Id.* at *11 (quoting *Hanlon*, 150 F.3d at 1020); *see Conti,* 2023

24   U.S. Dist. LEXIS 124524, at *21 ("The test of typicality is whether other members have the same or

25   similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and

26   whether other class members have been injured by the same course of conduct.").

27

28

1    In the Preliminary Approval Order, the Court found that "Plaintiff's claims are typical of the

2 claims of the Settlement Class," ECF No. 93 at 4, arising out of the same common course of conduct

3 by Defendant. Moreover, no facts exist that would subject Plaintiff to unique defenses which threaten

4 to become the focus of this Action.

5    The burden of demonstrating typicality has been met.

6        4.    <u>Plaintiff and Plaintiff's Counsel Adequately Represent the Interests of the Class</u>

7    Adequacy under Rule 23(a) requires a determination of: "(1) whether the named plaintiffs and

8 their counsel have potential conflicts with the other class members; and (2) whether counsel chosen

9 by the representative party is qualified, experienced, and able to vigorously conduct the litigation." *In*

10 *re Hyundai and Kia Fuel Econ. Litig.,* 926 F.3d 539, 566 (9th Cir. 2019) (citing *Hanlon*, 150 F.3d at

11 1020).

12    In the Preliminary Approval Order, the Court found that "Plaintiff and Settlement Class

13 Counsel have fairly and adequately represented, and will continue to fairly and adequately represent,

14 the interests of the Settlement Class Members." ECF No. 93 at 4. Plaintiff and Plaintiff's Counsel have

15 adequately represented the Settlement Class. Plaintiff contributed meaningfully and capably to the

16 representation of the Settlement Class. Moreover, there is nothing to suggest a conflict of interest

17 between Plaintiff and the Settlement Class. Avery Decl., ¶¶36,78.

18    Likewise, Plaintiff's Counsel have capably and competently prosecuted this Action in the best

19 interests of the Settlement Class. Utilizing their years of distinguished experience litigating and

20 resolving complex class actions, Plaintiff's Counsel secured a restorative and beneficial settlement for

21 the Settlement Class.

22    The burden under Rule 23(a)(4) has been met.

23        5.    <u>Common Issues Predominate</u>

24    Predominance under Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive

25 to warrant adjudication by representation." *Hanlon,* 150 F.3d at 1022 (citing *Amchem Prods*., 521 U.S.

26 at 623). "The main concern in the predominance inquiry is the balance between individual and

27 common issues. Implicit in the satisfaction of the predominance test is the notion that the adjudication

28

of common issues will help achieve judicial economy." *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 443 (E.D. Cal. 2013) (internal quotations and citations omitted).

In the Preliminary Approval Order, the Court found that "for purposes of settlement, the Settlement Class meets the predominance…requirement[] of Rule 23(b)(3)." ECF No. 93 at 5. The central issues in this Action, all of which stem from Defendant's automatic enrollment of its customers in an automatically renewing Streamlabs Pro subscription, "[a] common nucleus of facts" (*Hanlon*, 150 F.3d at 1022), are common to all Settlement Class members, and continue to predominate over any individual issues.

6.    A Class Action is Superior to Alternative Methods of Resolution

Superiority under Rule 23(b) requires "a determination of 'whether objectives of the particular class action procedure will be achieved in the particular case.'" *Hanlon,* 150 F.3d at 1023 (citation omitted). "Where class wide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be the superior method for managing litigation if no realistic alternative exists." *Barbosa*, 297 F.R.D. at 445. Accordingly, the following matters are considered pertinent to the Court's determination:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Rule 23(b)(3)(a)-(d).

In the Preliminary Approval Order, the Court found that "for purposes of settlement, the Settlement Class meets the…superiority requirement[] of Rule 23(b)(3)." ECF No. 93 at 5. To date, the Settlement Class Members have not expressed an interest in individually controlling the prosecution of separate actions. Neither have any members of the Settlement Class commenced litigation against Defendant concerning the latter's automatic enrollment and automatic renewal practices. Where, as here, "the potential recovery by any individual plaintiff is relatively

small…individual members of the class would likely be unwilling or unable to institute separate suits." *Barbosa*, 297 F.R.D. at 445.

Notwithstanding, the third factor, "the desirability or undesirability of concentrating the litigation of the claims in the particular forum" (Rule 23(b)(3)(C)), and fourth factor "the likely difficulties in managing a class action" (Rule 23(b)(3)(D)) are "[i]n the context of settlement, however…rendered moot and are irrelevant." *Barbosa,* 297 F.R.D. at 444.

Otherwise, certifying the Settlement Class "would achieve economies of time, effort, and expense, and promote uniformity." *Gatchalian v. Atl. Recovery Sols., LLC*, No. Case No. 22-cv-04108-JSC, 2023 U.S. Dist. LEXIS 205823, at *17 (N.D. Cal. Nov. 16, 2023). "[C]lass treatment is not merely the superior, but the only manner in which to ensure fair and efficient adjudication of the present action." *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 537 (C.D. Cal. 2011).

The Settlement Class decidedly satisfies the requirements of Rules 23(a), (b)(2), and (b)(3). Accordingly, the Court should affirm its certification of the Settlement Class for purposes of this Settlement.

### C.    The Notice Plan Satisfied Due Process And Complied With Fed. R. Civ. P. 23(e)

Rule 23 further provides that "the class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice,* 688 F.2d at 624. Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Likewise, under Rule 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."

The Court previously examined the Notice Plan, and determined that "the Parties' plan for providing notice is reasonable calculated to provide notice to the Settlement Class of the pendency of the Action, certification of the Settlement Class, the terms of the Settlement Agreement, and the Final Approval hearing, and complies fully with the requirements of the California and United States Constitutions, Rule 23 of the Federal Rules of Civil Procedure, and any other applicable law." *See*

ECF No. 93 at 7. As instructed by the Preliminary Approval Order, Angeion implemented the Notice Plan, individually e-mailing Notice directly to potential members of the Settlement Class, in addition to launching the approved video advertisement and social media campaign.  The Notice Plan successfully apprised the Settlement Class of: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." *See* Rule 23(c)(2)(B); Avery Decl., ¶¶50-51.

In so doing, the Notice Plan satisfied both the Rule 23 requirements and due process considerations, providing comprehensive notice of the Settlement to the Settlement Class.

## V.    **THE PLAN OF ALLOCATION SHOULD BE APPROVED**

Lastly, Plaintiff respectfully requests approval of the Plan of Allocation of the Net Settlement Fund. "Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re Omnivision*, 559 F. Supp. 2d at 1045. In making this determination, courts have typically found that "[a] plan which 'fairly treats class members by awarding a pro rata share to every Authorized Claimant, [even as it] sensibly makes interclass distinctions based upon, inter alia, the relative strengths and weaknesses of class members' individual claims' should be approved as fair and reasonable." *Andrade-Heymsfield v. Nextfoods*, Inc., No.: 3:21-cv-01446-BTM-MSB, 2024 U.S. Dist. LEXIS 151063, at *10 (S.D. Cal. Apr. 8, 2024) (quoting *In re MicroStrategy*, Inc., Sec, Litig., 148 F. Supp. 2d 654, 669 (E.D. Va. 2001)).

Here, the Agreement provides that if there are sufficient funds in the Net Settlement Fund, each Settlement Class Member who submits a Valid Claim will receive a refund based on the number of monthly subscription payments made to Defendant from March 3, 2018 through May 17, 2022, other than the initial monthly charge for access to Streamlabs Pro. ¶4.5. *See Andrade-Heymsfield,* 2024 U.S. Dist. LEXIS 151063, at *10 (quoting *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358,

367 (S.D.N.Y. 2002)) ("The allocation formula used in a plan of allocation need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel.") Where applicable, a Settlement Class Member that has already received a refund from Defendant for any of their monthly subscription payments, will have the amount deducted from their refund under the Settlement. *See* Avery Decl., ¶¶55-57. However, "[i]f the Net Settlement Fund…is insufficient to pay all Valid Claims, the payments to Settlement Class Members who file Valid Claims shall be pro-rated." Stipulation, ¶4.5*; see also Hefler,* 2018 U.S. Dist. LEXIS 213045, at *33 (internal quotation and citation omitted) (approving a plan of allocation that. disburses the Settlement Fund to class members on a pro rata basis based on the relative size of the potential claims that they are compromising. This type of pro rata distribution has frequently been determined to be fair, adequate, and reasonable.). Thereafter, "Valid Claims shall be paid primarily by digital payment to Settlement Class Members." ¶4.9.

The Plan further provides that "[a]ny remainder from unclaimed funds shall be distributed to a §501(c)(3) charity selected by Plaintiff's Counsel, subject to approval of Defence Counsel, which approval shall not be unreasonably withheld and approved by the Court." ¶4.10. The selected charity is Ablegamers Foundation Inc. Avery Decl., ¶35. It assists persons with disabilities to socialize through online game playing, "in order to combat social isolation, foster inclusive communities, and improve the quality of life for people with disabilities." https://ablegamers.org/impact/.

# VI.    CONCLUSION

For all the reasons cited above, this Court should finally certify the Settlement Class, appoint Plaintiff as its representative, and grant final approval of the Settlement.

DATED:  December 4, 2024              Respectfully submitted,

/s/ *Patricia Avery*
_____
Patricia I. Avery (admitted *Pro Hac Vice*)
Philip M. Black (SBN 308619)
**WOLF POPPER LLP**
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600
Email: pavery@wolfpopper.com
           pblack@wolfpopper.com

[No. 3:22-cv-01330-LB] PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMORANDUM

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Attorneys for Plaintiff and the Class*

Kristin J. Moody (SBN 206326)
Alexander S. Vahdat (SBN 284963)
**BERMAN TABACCO**
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6282
Email: kmoody@bermantabacco.com
        avahdat@bermantabacco.com

*Local Counsel for Plaintiff and the Class*